## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

OFFICIAL COMMITTEE OF
 UNSECURED CREDITORS, et al.,

       Plaintiffs,    :    Case No. 1:04-cv-066

                                            District Judge Thomas M. Rose
     -vs-                                  Chief Magistrate Judge Michael R. Merz
                                         :

KAREN L. HENDRICKS, et al.,

       Defendants.

**DECISION AND ORDER GRANTING MOTION TO STRIKE**

       This case is before the Court on Defendant Hendricks' Motion (Doc. No. 100) to Strike the Declarations of Irma Rudat (Doc. No. 84) and Francisco G. Llaca, Jr. (Doc. No. 82), and the Affidavit of Robert J. Jones (Doc. No. 79). Plaintiffs oppose the Motion (Doc. No. 106) and Defendant Hendricks has filed a Reply in Support (doc. No. 107). The Motion to Strike has been expressly referred to the undersigned for decision (Additional Order of Reference (Doc. No. 121).

**Declaration of Irma Rudat**

       Defendant Hendricks requests that the Declaration of Irma Rudat be stricken because she has never been properly identified as a witness in this case. In their Memorandum in Opposition, Plaintiffs assert they "identified these individuals as potential witnesses." (Doc. No. 106 at 2). However, they provide no proof of such identification. They reference an Initial Disclosure

1

Statement of May 9, 2005, but attach no copy.[1] Ms. Rudat is not listed in the Plaintiffs' purported Initial Disclosure of Documents and Persons Likely to have Discoverable Information (copy attached as Exhibit A to Doc. No. 107). Nor is she listed in Plaintiffs' Response to Defendant Hendricks' First Set of Interrogatories (copy attached as Exhibit B to Doc. No. 107; served by Plaintiffs on February 15, 2007) in response to Interrogatory No. 2 which called for the identification of persons likely to have discoverable information. Finally, she is not listed in the Notice of Plaintiffs' Lay Witness Identification (Doc. No. 35). Plaintiffs do not claim that they ever supplemented their Fed. R. Civ. P. 26(a)(1) disclosures or their interrogatory answers to name Ms. Rudat as a witness, nor have they ever moved to amend their lay witness list to add her.

Fed. R. Civ. P. 26(a)(1) requires the disclosure without request of the identity of all persons having discoverable information. Fed. R. Civ. P. 26(e) requires that these disclosures and any answers to interrogatories be timely supplemented if the disclosure or answer was incomplete. Fed. R. Civ. P. 26(a)(3) requires a party to disclose the identity of its trial witnesses at a time set by the Court. Under Fed. R. Civ. P. 37(c), a witness not disclosed as required is not to be used "to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Plaintiffs have not offered any purported justification for their failure to identify Ms. Rudat on any one of the three occasions on which they were obliged to do so and their failure is plainly not harmless.

Therefore, the Declaration of Irma Rudat is stricken in its entirety. Given this conclusion, there is no need to consider the alternative requests for relief respecting her testimony.

---

[1] Defendant Hendricks claims never to have received the referenced document (Doc. No. 107 at 3, n.7). If the document has been previously filed with the Court, no docket reference is given.

2

**Declaration of Francisco G. Llaca, Jr.**

Defendant Hendricks claims Mr. Llaca's Declaration should also be stricken because, although he was identified by name, the disclosed subject matter of his testimony was very different from the content of his Declaration.

In their Fed. R. Civ. P. 26(a)(1) filing, Plaintiffs identify Mr. Llaca as having information with respect to Bolero Investment Group, noted to be a shareholder of Baldwin Piano; nothing is said about any information he might have as corporate secretary and counsel of Dwight's Piano. In their answer to Interrogatory No. 2, Plaintiffs indicated Mr. Llaca had knowledge regarding Bolero and "certain post-petition administrative matters after the sale of debtor's assets in bankruptcy"; there is still nothing here about information gained as corporate secretary and counsel of Baldwin. Finally, in their lay witness identification, Plaintiffs again identified Mr. Llaca as an intended witness regarding Ken Pavia, the principal investor in Bolero Investment Group. As with Ms. Rudat, none of these disclosures has been amended.

Therefore, ¶¶ 6, 7, and 8 of Mr. Llaca's Declaration, which exceed the scope of any prior disclosure, are stricken on the same bases as Ms. Rudat's Declaration was stricken. Given this conclusion, there is no need to consider the alternative requests for relief respecting his testimony.

The Court notes Plaintiffs' bold-faced[2] assertion that "**the Defendants have deposed exactly zero (0) fact witnesses**." Based on the scope of disclosure as to Mr. Llaca (and the failure to disclose Ms. Rudat at all), this comment, which Defendant Hendricks contests in any event, hardly provides a basis for denying Defendant's Motion.

---

[2]"Bold," not "bald." The Court is referring to Plaintiffs' having printed this assertion in bold-faced type. (Doc. No. 106 at 3)

**Affidavit of Robert Jones**

    **Failure to Disclose Substance of Testimony**

Robert Jones succeeded Defendant Hendricks as chief executive officer of Baldwin Piano. Defendant Hendricks objects to his Affidavit in the first instance because it avers facts not previously disclosed as being known by him, one of the bases on which the Llaca Declaration was opposed.

In their Fed. R. Civ. P. 26(a)(1) disclosures, Plaintiffs identified Mr. Jones as "CEO." He was similarly described in the answer to Interrogatory No. 2, along with a notation that his whereabouts were unknown. In their Identification of Lay Witnesses, Plaintiffs indicated Jones would testify about "the condition of Baldwin pre-bankruptcy filing." Again, as with Rudat and Llaca, this answer and these disclosures have never been supplemented. Further, in contrast to their extensive listing by paragraph of factual allegations in the proposed second amended compliant as to which other witnesses would testify, Plaintiffs gave no such references as to Mr. Jones.

Paragraphs 6 through 13 of Mr. Jones' Affidavit describe what he found when he became chief executive office of Baldwin in May, 2001, and thereafter until the company filed for bankruptcy protection and thus arguably come within the scope of "the condition of Baldwin pre-bankruptcy filing." Thus his Affidavit is not excludable on the basis of any misdescription in the Plaintiffs' Identification of Lay Witnesses. The substance of these allegations were not disclosed prior to the filing of Mr. Jones' Affidavit.

Fed. R. Civ. P. 26(a)(1) requires disclosure of the identity of persons with discoverable information, not the substance of what they would testify to. Interrogatory No. 2 merely repeats that request from Fed. R. Civ. P. 26(a)(1). Similarly, Fed. R. Civ. P. 26(a)(3) does not require disclosure of the substance of a witness' expected testimony. Therefore Mr. Jones' Affidavit is not excludable based on failure to disclose its substance at some prior time during discovery and the Court must

4

examine the alternative bases asserted for its requested exclusion.

**Lay Opinion Testimony**

Defendant Hendricks notes that Mr. Jones concludes prior Baldwin management committed fraud. In ¶ 10 he avers that he "discovered numerous instances of just fraudulent transactions." In ¶ 11 he refers to the same transactions as "fraudulent," in ¶ 12 he speaks of "fraudulent business practices and transactions," and in ¶ 14 he speaks of "fraudulent transactions and procedures."

The elements of an action in actual fraud in Ohio are (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54, 514 N.E. 2d 709 (1987), citing *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St. 3d 69, 491 N.E. 2d 1101, ¶2 of the syllabus (1986); and *Cohen v. Lamko, Inc*., 10 Ohio St. 3d 167, 462 N.E. 2d 407 (1984). Under this definition, the determination of whether a particular set of facts constitutes fraud will require testimony on a number of purely historical factual issues, e.g., what representations were made to whom at what time. Reliance and injury will be subject to testimony by the victim. Knowledge of falsity is a factual question, but, unless the tortfeasor admits knowledge, will probably be a matter of inference; the same is true of intent to defraud. Materiality is probably a mixed question of law and fact. Whether the accused tortfeasor had a duty to disclose and whether any reliance was justifiable are mixed questions of law and fact, dependent on applying standards from outside the definition of fraud of the historical facts.

Concern about letting a lay witness summarize his or her conclusions about these matters in an opinion that a particular transaction was "fraudulent" lie behind the case authority cited by

5

Defendant Hendricks for exclusion of Mr. Jones' opinion.  Under Fed. R. Civ. P. 56(e), a witness' affidavit offered in support of or opposition to a motion for summary judgment, must set forth "facts that would be admissible in evidence."  Whether Mr. Jones' conclusion that certain transactions and practices are "fraudulent" is treated as a conclusion of law or as a mixed conclusion of law and fact, it is not a "fact" which would be admissible in evidence.  Therefore, Mr. Jones' conclusions that certain transactions or practices were "fraudulent" is stricken.  This is without prejudice to any determination of whether Plaintiffs might be entitled to an inference of fraud based on whatever historical facts are presented in support of their Motion for Summary Judgment or in opposition to the summary judgment motions of Defendants.

**Hearsay Testimony**

Defendant Hendricks requests that certain testimony in Mr. Jones' Affidavit be stricken as hearsay or dependent on hearsay.

Plaintiffs do not attempt to justify any of Mr. Jones' statements under exceptions to the hearsay rule.  Instead, they assert flatly that "he necessarily gained personal, first-hand knowledge of what his predecessor (Karen Hendricks) had been doing" and [t]hese sworn statements are not hearsay, but statements of fact based upon personal knowledge gained in the course of performance of their corporate duties."  Thus Plaintiffs concede, as is appropriate, that hearsay is not admissible in an affidavit on a motion for summary judgment.[3]  Furthermore, an affiant's conclusory assertion that his or her statements are based on personal knowledge is insufficient; Fed. R. Civ. P. 56(e) requires that the affidavit "show that the witness is competent to testify on the matters stated."  This of course includes demonstrating that the witness has personal knowledge as required by Fed. R.

---

[3]Of course, the affidavit itself is hearsay – an out-of-court statement offered to prove its content.  However, Fed. R. Civ. P. 56(e) permits consideration of affidavits on a summary judgment motion, so long as they are made on personal knowledge.

Evid. 602.

      The Court therefore proceeds to consider the Jones Affidavit for possible hearsay problems:

1. The second sentence of ¶ 6 reads "Based upon the information and documents created or maintained by Ms. Hendricks and the previous board of directors, it appeared that Baldwin was approximately $500,000 overdrawn on its line of credit with G. E. Capital Corporation ("GECC") in May of 2001." Mr. Jones does not say he observed Ms. Hendricks or the prior board create or maintain these documents; he must, therefore, have learned it from others. Therefore, his statement that they created or maintained the documents is hearsay and is stricken. Moreover, he does not identify the documents to which he refers or suggest any basis on which the documents themselves would be admissible in evidence. There may be such a basis, but none is offered.

2. The first sentence of ¶ 7 avers that "it was discovered that company had grossly manipulated . . . ." Who made the discovery? If Mr. Jones made the discovery, he could readily have said "I discovered." Use of the passive voice implies that someone else made the discovery and reported it to Mr. Jones; his repetition of the discovery in the Affidavit thus becomes hearsay which must be stricken.

3. In ¶ 8 Mr. Jones avoids the passive voice problem by averring that "I discovered that the company was paying more than $100,000 per month for *inter-company* transportation . . . ." A hearsay problem still exists, however, because Mr. Jones does not say how he discovered these payments. Presumably if he watched money being handed from one person to another, he could testify to that; he would have personal knowledge under Fed. R. Evid. 602. That, however, seems unlikely. What is more likely is that he made the discovery by reviewing books and records of the company, to wit, hearsay. Mr. Jones does not even allude to what sources he relied on for his discovery, but Fed. R. Civ. P. 56(e) requires an

7

affiant to demonstrate competence. Mr. Jones may have been thoroughly competent in a business sense to reach the conclusions he states in this paragraph, but the test under Fed. R. Civ. P. 56(e) is evidentiary competence. Mr. Jones' statement of his discovery in ¶ 8 is also hearsay and is stricken.

4. The same hearsay problems require the striking of Mr. Jones' discoveries reported in ¶¶ 9 and 10 and his report of the Interlochen transaction in ¶ 10.

5. In ¶ 11, he reports his conclusion that certain Baldwin employees "had been specifically instructed to record these fraudulent transactions in this manner, and then were prohibited from accessing or amending the transactions . . . " He does not aver that he heard the instructions given or prohibitions made. Is he relying on written instructions or prohibitions? If so, why haven't they been identified and some foundation offered for their admission into evidence? The hearsay in ¶ 11 is also stricken.

6. In ¶ 12, he admits that the discovery he reports was based at least in part on assistance of Ms. Rudat and an auditor from GECC, to wit, hearsay sources. The statement about this discovery is also inadmissible hearsay and is stricken.

### Conclusion

To the extent and for the reasons set forth herein, Defendant Hendricks' Motion to Strike is GRANTED. The stricken material will not be considered in deciding the pending motions for summary judgment.

August 1, 2008.

s/ **Michael R. Merz**
Chief United States Magistrate Judge
